## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| CEPHRAS BRYANT,<br>6409 Atwood Street<br>District Heights, MD 20747 )<br><br>Plaintiff, )<br><br>v. )<br><br>TARGET CORPORATION,<br>10401 Martin Luther King Jr. Highway<br>Lanham, MD 20720 )<br><br>Defendant. )<br>_____ ) | **Civil Action No. 14-**<br><br>**Complaint and**<br>**Demand for Jury** |

## COMPLAINT

Plaintiff, Cephras Bryant ("Plaintiff" or "Mr. Bryant"), by and through his undersigned counsel, initiates this action to seek redress against Defendant, Target Corporation, his former employer, for discrimination because of his disability and retaliation for engaging in legally protected activity in violation of the Americans with Disabilities Act as Amended, 42 U.S.C. § 12101 *et seq.*

## SUMMARY

Plaintiff, Cephras Bryant, successfully worked as a Guest Services Team Leader at Target for over five years, notwithstanding undergoing a rigorous and exhausting hemodialysis regimen which often left him exhausted and required him to work a modified schedule.  In August 2012, Mr. Bryant applied for a promotion to a Senior Team Leader position.  In response to his application, his Store Manager falsely told him he would have to be available 24 hours/day, 7 days/week in order to be interviewed for the position.  Mr. Bryant complained to the EEOC of discrimination.  Target fired Mr. Bryant right after Mr. Bryant and Target participated

in mediation, falsely claiming that he had resigned.  Mr. Bryant was terminated in retaliation for his EEOC participation and opposition to Target's discriminatory practices.

## I.     THE PARTIES

1. Cephras Bryant is an adult male citizen of the State of Maryland who was employed by Defendant Target Corporation from August 2002-April 5, 2013.

2. Defendant Target Corporation ("Defendant" or "Target"), is a corporation authorized to conduct business in the State of Maryland.  Defendant Target is an "employer" within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111(5) and "covered entity" within the meaning of the ADA, 42 U.S.C. § 12111(2). Defendant does business at 10401 Martin Luther King Jr. Highway, Lanham, MD 20720.

3. At all times relevant, Defendant Target acted by and through its agents, servants, and employees, including Mr. Bryant's supervisors.

## II.     JURISDICTION AND VENUE

4. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the ADA, 42 U.S.C. § 12101 *et seq*.

6. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant Target is located and transacts business in the State of Maryland.

## III.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

8.  On or about October 22, 2013 and in May 2014, Mr. Bryant filed Charges of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging respectively that he had been subjected to disparate treatment because of his disability and retaliation, following and because of, his engagement in protected activity, all in violation of the ADA.

9.  On August 15, 2014, the EEOC issued a Determination as to the Charges, notifying Target that there was reasonable cause to believe that it violated the ADA through adverse employment actions, including failing to promote Mr. Bryant and by retaliating against Mr. Bryant based upon his engaging in protected activities.  The EEOC also found reasonable cause existed to believe Target subjected Mr. Bryant to an unlawful disability inquiry and medical examination, also in violation of the ADA.

10. On October 7, 2014, Mr. Bryant requested that the EEOC issue him a Right to Sue letter.

11. The instant action is timely because it is initiated within ninety (90) days of Mr. Bryant's receipt of the aforementioned Notice.

12. Mr. Bryant has fully exhausted his administrative remedies as required by the ADA

## IV.   FACTUAL BACKGROUND

13. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

14. Mr. Bryant was first employed by Target from August 2002 until April 2006 at the Company's Bowie store, working as a Sales Floor Team Member and later a Photo Lab Specialist.  In April 2006, Mr. Bryant voluntarily resigned from his first employment with Target.

15. On or about August 21, 2008, Mr. Bryant was re-hired by Target as a Guest Services Team Leader and worked at the company's store located at 10401 Martin Luther King Jr. Highway, Lanham, MD 20720.

16. As Guest Services Team Leader, Mr. Bryant was responsible for leading and coaching a group of Team Members, including cashiers, cart attendants, and guest service desk attendants.  In this position, Mr. Bryant regularly supervised approximately 12-15 other employees.

17. Mr. Bryant reported to Store Manager George Tucker.

18. Mr. Bryant was diagnosed with end stage renal disease ("ESRD") at birth.  ESRD is when the kidneys permanently stop working well enough for the patient to live without dialysis or a transplant.

19. ESRD substantially limits the operation of one or more major bodily functions, including but not limited to the operation of Mr. Bryant's kidneys.

20. At all times relevant hereto, Mr. Bryant treated his ESRD by taking medication and undergoing hemodialysis.

21. Mr. Bryant's medications included medications for hypertension, cardio management, and phosphate binders.

22. Initially, Mr. Bryant underwent hemodialysis three days per week for approximately 4 hours at a time.  In 2012, because of complications with the hemodialysis, Mr. Bryant was undergoing hemodialysis three days per week from 8pm-4:30am.  During hemodialysis, a dialysis machine and a special filter called an artificial kidney, or a dialyzer, are used to clean Mr. Bryant's blood.  To get his blood into the dialyzer, the doctor would make an access, or entrance, into his blood vessels. This was done with minor surgery, to Mr. Bryant's arm to

create a fistula.  A fistula is a surgically-constructed connection between an artery and vein, designed to withstand frequent needle insertions and augment blood flow.

23. Being attached to a dialysis machine was constricting, and often caused pain and swelling in Mr. Bryant's arm, where the needle attached to his fistula.  Additionally, as a result of the hemodialysis, Mr. Bryant's sleep was regularly interrupted and he was frequently left exhausted.

24. As a result of his disability and treatments, in early 2011, Mr. Bryant requested to reduce his work hours from 40 hours per week to 30 hours per week.

25. Mr. Bryant discussed his need to reduce his work hours with Ronisha Franklin, Executive Team Lead of Human Resources because of his disability.

26. Target initially approved Mr. Bryant's request to work 30 hours per week, however, on or about May 26, 2011, Peter Klein, Executive Team Leader of Human Resources and George Tucker cancelled the accommodation until the need for accommodation could be re-verified by Ms. Franklin.

27. On or about July 29, 2011, Mr. Bryant applied for a promotion to Senior Team Leader.  His application was rejected without an interview and he received no feedback.

28. In or about October 2011-February 2012, Mr. Bryant took medical leave to manage his disability.

29. In or about May 2012-August 2012, Mr. Bryant again took medical leave to manage his disability.

30. On or about August 30, 2012, Mr. Bryant applied for a promotion to a Senior Team Leader position.  At the time of his application, he had been a Team Lead for 5 years and had

reached the maximum wages earnable in the Team Lead position (Pay Grade 13). As a result, he had not received a raise in 3 years.

31. On his application for the Senior Team Lead position, Mr. Bryant noted his availability restrictions because of his disability.

32. On October 15, 2012, Mr. Bryant received an e-mail from George Tucker in response to his application.

33. In his e-mail, Mr. Tucker stated, "In order for you to be considered for the Senior Team Leader Position you have to have completely open availability. I have looked up your availabilities and there are some opportunities that we cannot work around. Please submit an availability change request to me so you can go through the process. Please get with me ASAP."

34. Mr. Tucker's e-mail was also sent to Joseph Kingsley, another Team Leader in Mr. Bryant's store, who upon information and belief, had already been interviewed for the position, on or about October 3, 2012, and who also had availability restrictions.

35. On October 15, 2012, Mr. Bryant spoke with Peter Klein, on two occasions about his application. Mr. Klein told Mr. Bryant that "not being available anytime and all of the time is the same as not being able to lift a box for a position that requires boxlifting."

36. Mr. Bryant asked Mr. Klein if his availability was the only factor that was pending as to whether or not he would get an interview or be further considered, to which Mr. Klein responded, "yes." Mr. Klein further explained that the duties and responsibilities of the Senior Team Leader were the same as the Team Leader position which Mr. Bryant currently held, with the added responsibility of Leader on Duty Shifts.

37. Mr. Bryant reminded Mr. Klein that the reason he could not be available anytime and/or all of the time was because he was on dialysis.

38. On October 16, 2012, Mr. Bryant responded to Tucker's e-mail stating, "I have some concerns about the position and the availability I have submitted.  I will be speaking with Tracey and/or Peter."  Mr. Bryant submitted his response to George Tucker, Tracey Sangria, Store Team Leader, and Peter Klein.

39. On or about October 18, 2012, Mr. Bryant spoke with Tracey Sangria about the Senior Team Lead Position.  Mr. Bryant explained that he was on dialysis and couldn't be available any or all of the time.  Ms. Sangria insisted that Mr. Bryant's availability was a key factor in being considered for the position.  Mr. Bryant explained his disability and availability restrictions to Ms. Sangria.  Ms. Sangria stated that if Mr. Bryant were to take a similar medical leave of absence (from May-August) as Senior Team Leader during the holiday season, it would be a "problem" for Target.

40. On or about October 22, 2012, Mr. Bryant completed an Equal Employment Opportunity Commission Intake Questionnaire form.

41. In November 2012, Peter Klein provided Mr. Bryant with a document entitled "Accommodation Questionnaire."  Mr. Klein told Mr. Bryant that he must return the form, completed by his physician, before he would be further considered for a promotion to Senior Team Leader position.

42. The "Accommodation Questionnaire" requested detailed information about Mr. Bryant's health and physical abilities, notwithstanding the fact that Target had not extended Mr. Bryant any offer of employment to the Senior Team Leader position.

43. Upon information and belief, Target did not provide the Accommodation Questionnaire to any other applicants for the Senior Team Leader position to which Mr. Bryant applied.

44. Target eventually hired Joseph Kingsley, who upon information and belief, did not have a disability under the ADA.  However, Mr. Kingsley did have availability restrictions, just as Mr. Bryant.  On information and belief, at the time of his selection, Mr. Kingsley had worked for Target for approximately one year as a Team Leader for Target, where he supervised just one other employee in Starbucks Department.

45. On information and belief, Human Resources informed Mr. Bryant that "completely open availability" was not an essential function of the Senior Team Lead position to which Mr. Bryant had applied.

46. On or about January 22, 2013, Store Team Leader Tracey Sangria informed Mr. Bryant that there was another Senior Team Leader position available and invited him to apply.  Ms. Sangria conditioned Mr. Bryant being interviewed for the position by him turning in Defendant's "Accommodation Questionnaire."

47. Additionally, on January 22, 2013, Rebecca Cisek, Target's HR Business Partner confirmed that Mr. Bryant would not be considered for the Senior Team Leader position until he completed Defendant's "Accommodation Questionnaire."

48. On information and belief, as of January 22, 2013, Target had been notified by the EEOC of Mr. Bryant's Charge of Discrimination.

49. On or about April 5, 2013, Mr. Bryant and Target attempted to mediate Mr. Bryant's Charges at the Equal Employment Opportunity Commission's offices.

50. On April 8, 2013, Mr. Bryant learned that Peter Klein had publicly announced that Mr. Bryant had resigned and would not be returning to Target.

51. On April 12, 2013, Target informed Mr. Bryant that he was terminated, just seven days after the mediation.

52. On April 17, 2013, Mr. Bryant filed a second charge with the EEOC alleging that Target had terminated him because he engaged in protected activity by filing an EEOC Charge and engaging in mediation.

53. Prior to his termination, Mr. Bryant had been rated by Target as "Effective," and had no documented disciplinary or performance issues.

54. Mr. Bryant never resigned from his employment and Target terminated his employment in retaliation for his EEOC participation.

**COUNT ONE: VIOLATIONS OF THE ADA – DISPARATE TREATMENT AND FAILURE TO PROMOTE BECAUSE OF DISABILITY**

55. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

56. Mr. Bryant's ESRD is a disability under the ADA in that it substantially limits the operation of a major bodily function -- the operation of his kidneys -- and substantially limits him in one or more major life activities, including but not limited to sleeping.

57. Target subjected Mr. Bryant to disparate treatment and different terms and conditions of employment based on his disability.

58. Mr. Bryant applied for and was qualified for the Senior Team Leader position.

59. Mr. Bryant could perform the essential functions of the position with or without reasonable accommodation.

60. Target rejected Mr. Bryant's application for the Senior Team Leader position because of his disability.

61. Target hired a non-disabled employee as Senior Team Leader who also had availability restrictions.

62. As a direct and proximate result of these unlawful acts by Defendant, Plaintiff Bryant has suffered and continues to suffer lost wages, benefits and entitlements, damage to his career, pain, suffering, humiliation, and emotional distress.

## COUNT TWO: VIOLATIONS OF THE ADA – DENIAL OF REASONABLE ACCOMMODATIONS

63. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

64. Mr. Bryant's ESRD is a disability under the ADA in that it substantially limits the operation of a major bodily function -- the operation of his kidneys -- and substantially limits him in one or more major life activities, including but not limited to sleeping.

65. Mr. Bryant applied for and was qualified for the Senior Team Leader position.

66. Mr. Bryant could perform the essential functions of the position with or without reasonable accommodation.

67. Target refused to engage in the interactive process with Mr. Bryant and refused to accommodate his disability in connection with his application for the Senior Team Leader position.

68. As a direct and proximate result of these unlawful acts by Defendant, Plaintiff Bryant has suffered and continues to suffer lost wages, benefits and entitlements, damage to his career, pain, suffering, humiliation, and emotional distress.

## COUNT THREE: VIOLATIONS OF ADA– UNLAWFUL DISABILITY RELATED INQUIRIES

69. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

70. As a condition of being considered and interviewed for the Senior Team Leader position, Defendant required Plaintiff to complete an Accommodation Questionnaire.

71. The EEOC's Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act provides: "An employer should treat an employee who applies for a new job as an applicant for the new job. The employer, therefore, is prohibited from asking disability-related questions or requiring a medical examination before making the individual a conditional offer of the new position. After the employer extends an offer for the new position, it may ask the individual disability-related questions or require a medical examination as long as it does so for all entering employees in the same job category."

72. Target's Accommodation Questionnaire constituted a disability related inquiry.

73. In requiring Plaintiff to provide the Accommodation Questionnaire prior to receiving an offer for the Senior Team Lead position, Target violated the ADA, 42 U.S.C. § 12112(d)(4).

74. As a direct and proximate result of these unlawful acts by Defendant, Plaintiff Bryant has suffered and continues to suffer pain, suffering, humiliation, and emotional distress.

## COUNT FOUR: VIOLATIONS OF ADA – RETALIATORY TERMINATION

75. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

76. Mr. Bryant engaged in protected activity through his participation in the EEOC process, including the filing his EEOC Charge and attending an EEOC Mediation.

77. Target retaliated against Mr. Bryant because of his protected activity in violation of the ADA, 42 U.S.C. § 12203, by terminating his employment.

78.  A causal connection exists between Mr. Bryant's protected activity and Target's termination of Mr. Bryant.

79. As a direct and proximate result of these unlawful acts by Defendant, Plaintiff Bryant has suffered and continues to suffer lost wages, benefits and entitlements, damage to his career, pain, suffering, humiliation, and emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, the premises considered, Plaintiff Bryant respectfully prays that this Honorable Court:

1. Enter judgment on Plaintiff Bryant's behalf against Defendant Target on all counts contained herein;

2. Award Plaintiff Bryant compensatory and other damages;

3. Award back pay to Plaintiff Bryant;

4. Instate Mr. Bryant into the Senior Team Lead position or award him front pay;

5. Award punitive damages to Plaintiff Bryant;

6. Award Plaintiff Bryant his court costs, expenses, attorneys' fees, prejudgment interest, and post-judgment interest;

7. Declare that Defendant Target's conduct is in violation of the Americans with Disabilities Act as Amended;

8. Grant such other and further relief as this Court deems just and proper.


Dated:  October 20, 2014

Respectfully submitted,


/s/ Denise M. Clark
Denise M. Clark (17385)
Clark Law Group, PLLC
1250 Connecticut Ave., N.W.
Suite 200
Washington, D.C. 20036
(202) 293-0015
dmclark@benefitcounsel.com

/s/ Jeremy P. Monteiro
Jeremy P. Monteiro (17459)
Clark Law Group, PLLC
1250 Connecticut Ave, N.W.
Suite 200
Washington, D.C. 20036
(202) 293-0015
jmonteiro@benefitcounsel.com

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that 1) I have reviewed this Complaint; 2) Regarding the allegations of which I have personal knowledge, I believe them to be true; and 3) Regarding the allegations of which I do not have personal knowledge, I believe them to be true based on specified information, documents, or both and the foregoing is true and correct.

10/20/14
_____
Date

Cephras Bryant
_____
Cephras Bryant

DANA L. DEMPSEY
Notary Public
Prince George's County
Maryland
My Commission Expires Aug. 15, 2017